UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-1602-WYD-PAC

CHERYL J. MALE,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.

_____

**ORDER**

_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on a review of the Commissioner's decision that denied Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff's application filed February 4, 2002 (Transcript ["Tr."] at 48-52) was denied on initial determination (*id.* at 41-45). Plaintiff then requested a hearing. After a hearing on January 6, 2004 (*id.* at 196-213), Administrative Law Judge ["ALJ"] William J. Musseman issued an unfavorable decision on January 27, 2004, finding that Plaintiff was not under a disability as defined in the Social Security Act and thus not entitled to benefits. *Id.* at 12-21.

      In the decision, the ALJ found at steps two and three of the five-step sequential analysis required by law that Plaintiff has severe impairments that do not meet or equal the Listings; namely, "a schizoaffective disorder, an impairment which causes

significant vocationally relevant limitations." Tr. at 16-17.  The ALJ then proceeded to

evaluate Plaintiff's residual functional capacity ["RFC"].  *Id.* at 17-19.  He found that

Plaintiff "retains the residual functional capacity to perform a wide range of work at all

exertional levels." *Id.* at 18.  Mentally, however, he limited Plaintiff

> to the performance of work requiring no hourly quotas and no dealing
> with the general public.  She can occasionally deal with co-workers, and
> can perform simple tasks with a specific vocational preparation level of 2
> or less, requiring no more than 30 days to learn the skills needed for the
> work.

*Id.*  The ALJ found that this RFC "takes into consideration, and is fairly consistent with

the assessment of the State agency psychological consultant who reviewed the

record initially and on reconsideration." *Id.*

The ALJ found in reaching his RFC that Plaintiff's complaints that she is unable

to work due to an inability to stay focused mentally and to other mental impairments

(listed at 17-18 of the Transcript) were not credible in light of Plaintiff's "lack of

complaints of ongoing psychosis during the entirety of her medical records." *Id.* at 18.

He further relied for his credibility assessment on the facts that (1) Plaintiff had

consistently reported in the records that she was doing fairly well, with no ongoing

psychosis; (2) she cancelled and failed to show up for a number of appointments and

retained contact with her practitioners only to obtain refills on her medication, (3) the

records suggest that Plaintiff's psychiatric symptoms were fairly well controlled on

medication, and (4) Plaintiff was able to live independently and perform a wide range

of daily activities.  *Id.*

-2-

In deciding Plaintiff's RFC, the ALJ rejected the opinion of Dr. Madsen, who performed a one-time examination of Plaintiff, and gave little weight to the Medical Source Statement of Plaintiff's treating psychiatrist who found that Plaintiff had moderate to marked limitations of functioning. *Id*. at 18-19. Instead, the ALJ appeared to rely on the findings of Dr. Dyde, a state agency psychological consultant who did not examine Plaintiff and who rejected opinions of medical practitioners that had seen and evaluated her.

At step four, the ALJ found that Plaintiff had not performed any past relevant work. Tr. at 19. Thus, he proceeded to step five. *Id*. He considered Plaintiff's age (44 years old at the time of the decision, constituting a younger individual within the meaning of the regulations), education (eleventh grade), vocational profile (no transferable skills), RFC, and the testimony of a vocational expert ["VE"]. Tr. at 16, 19.

The VE testified that a hypothetical person with a RFC and vocational profile identical to that of Plaintiff was capable of making a vocational adjustment to work as an industrial cleaner with 50,000 jobs in the national economy and 720 jobs in the regional economy, a housekeeper with 149,000 jobs in the national economy and 4,183 in the regional economy, a ticker seller with 50,000 jobs in the national economy and 450 in the regional economy, and a street sweeper with 16,000 jobs in the national economy and 3,903 in the regional economy. *Id*. at 19. The ALJ concluded, based upon this testimony, that there were a significant number of jobs in the national economy which Plaintiff is capable of performing. *Id*. at 19-20. He thus

-3-

found that Plaintiff is "not disabled" within the meaning of the Social Security Act. *Id.* at 20.

The Appeals Council declined review of the ALJ's determination (Tr. at 6-8), making the case final for judicial review. This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.   ANALYSIS

A.   Standard of Review

A Court's review of a finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B.     Analysis of Plaintiff's Arguments

1.     Whether the ALJ Erred in Not Giving Weight to the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ erred in rejecting the May 21, 2002 assessment of her treating psychiatrist Dr. Dygert and the April 22, 2002 opinion of Dr. Madsen, a consultative psychologist.  I first note as to Dr. Dygert that he completed a Medical Source Statement of Ability to Do Work-Related Activities on May 21, 2002.   Tr. at 150-152.  In the assessment, he reiterated his diagnosis of schizoaffective disorder and more clearly described Plaintiff 's work-related impairments.  *Id.*[1]  These impairments are significant in that the VE testified in response to a hypothetical question that if a person needed to take unscheduled breaks every 90 minutes for 15 minutes, all work would virtually be eliminated.  *Id*. at 212.[2]  Dr. Dygert also assessed Plaintiff's GAF score as 35-55, which indicates major to moderate impairments.[3]  As to Dr. Madsen,

---

[1]  He opined in that regard that Plaintiff was severely limited in her ability to: work in coordination or proximity to others, complete a normal workday and workweek without interruptions from symptoms, perform at a consistent pace, and interact appropriately with the general public and peers.  *Id.* at 150-51.  He further opined that Plaintiff would have moderate limitations in her ability to: maintain attention and concentration, be punctual within customary tolerances, sustain an ordinary routine without special supervision, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  He further concluded that Plaintiff would likely be absent from work as a result of her impairments more than three times a month, and would require unscheduled breaks every 90 minutes for 15 minutes.  *Id.* at 151.

[2]  The VE further testified that if the person was unable to maintain even attention to the task, on a consistent basis, for eight hours a day, that would eliminate the jobs that he found Plaintiff could do and would eliminate virtually all work.  *Id.*

[3]  "'The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.'"  *Lee v. Barnhart*, 117 Fed. App. 674, 678, 102 Soc.Sec.Rep.Serv. 1 (10th Cir. 2004) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3

he was a consultative psychologist who examined Plaintiff, concurred with Dr.

Dygert's diagnosis and made specific clinical findings as to Plaintiff's mental status.

*See* Tr. at 146-49.

The ALJ gave Dr. Dygert's assessment "little weight."  He found that the

assessment was "not consistent with Dr. Dygert's own brief treatment notes which

were supportive of general symptom stability."  Tr. at 19.  He also found that the

assessment was "not consistent with the evidence of record as a whole, which

suggests a lack of compliance with therapy and treatment, as well as a failure to

report significant symptom progression."  *Id.* (citing Dr. Dygert's assessment and

medical records).  As to Dr. Madsen, the ALJ rejected his opinion that Plaintiff's ability

to perform work related activities was significantly limited on the basis that the opinion

"appears to be based in large part on the claimant's subjective reports. . . . "  *Id.* at 18.

He further noted that "Dr. Madsen's opinion was based upon a one-time examination

of the claimant, and is not consistent with the evidence of record as a whole. . . ."  *Id.*

He thus did not give Dr. Madsen's opinion any weight.  *Id.*  Instead, the ALJ appeared

---

(10th Cir. 2004)).  A GAF score of between 31-40 indicates "[s]ome impairments in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood . . . ."  *See* Diagnostic and Statistical Manual of Mental Disorder 34 (4th ed. 2000) ["DSM-IV"].  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).  *Lee*, 117 Fed. Appx. at 678 (quoting DSM-IV).  "A GAF score of fifty or less . . . suggest[s] an inability to keep a job."  *Id.*

to rely exclusively on the opinion of the consultative psychologist, Dr. Dyde, who did not examine Plaintiff.

Turning to my analysis, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling 96-2p. However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995).

"'When a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports "to see if they outweigh the treating [source's] report, not the other way around." *Valdez v. Barnhart*, 62 Fed. Appx. 838, 2003 WL 366751 at *2 (10th Cir. 2003) (quotation omitted).[4] "The opinion of an examining physician or psychologist is generally entitled to less weight

---

[4] While this is unpublished, I find that this opinion as well as other unpublished opinions cited in this Order have persuasive value with respect to a material issue that has not been addressed in a published opinion and/or will assist the Court in its disposition. 10TH CIR. R. 36.3(B).

than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Id.* (citing 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2).

I find that the case must be remanded for further factfinding because the ALJ's reasons for rejecting the impairments noted by Drs. Dygert and Madsen are not based on substantial evidence. As stated previously, the ALJ gave little weight to Dr. Dygert's assessment because he found that it was not supported by Dr. Dygert's own clinical notes. I find that this is not supported by substantial evidence. While there were treatment notes that found Plaintiff to be doing pretty good, and indications that Plaintiff was not experiencing thought disorders or auditory hallucinations during certain visits, the ALJ ignored evidence that during other visits, Dr. Dygert found that thought disorders and auditory hallucinations were present. *Id.* at 159, 175. The ALJ also ignored Dr. Dygert's finding that Plaintiff had a somewhat blunted affect and limited verbal output. *Id.* at 164. Finally, the ALJ ignored the fact that Dr. Dygert's assessment was consistent with his diagnosis of schizoaffective disorder made throughout Plaintiff's treatment. *Id.* at 161, 164, 175. "The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, 117 Fed. App. 674, 678, 102 Soc.Sec.Rep.Serv. 1 (10th Cir. 2004).

The ALJ also rejected Dr. Dygert's assessment of Plaintiff because the record "suggests a lack of compliance with therapy and treatment, as well as a failure to report significant symptom progression." Tr. at 19. The fact that Plaintiff cancelled a number of appointments with her treating psychiatrist and/or did not report symptom progression does not, however, invalidate the clinical findings and diagnosis made by Dr. Dygert during the treatment of Plaintiff when she did appear for her appointments. Further, as to the alleged lack of compliance by Plaintiff, the ALJ ignored the evidence in Dr. Dygert's medical records that Plaintiff "has remained compliant with her medication and Doctor appointments" even though she was inconsistent in keeping appointments. *Id.* at 161.

Finally, I find that the ALJ erred in rejecting the opinions of Dr. Dygert outright, as he appeared to do. Even if he had properly found that Dr. Dygert's opinion was entitled to limited weight, a finding which is not supported by substantial evidence, Dr. Dygert's opinion was "'still entitled to deference and [should have been] weighed using all of the [relevant] factors.'" *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ's opinion does not reflect that he gave this assessment any deference, that he gave "any consideration of what lesser weight the opinion should be given", or that he discussed or considered the relevant factors set out in [42 U.S.C.] § 404.1527. *See id.*

Turning to Dr. Madsen, he found that Plaintiff had "some difficulty with orientation", her [a]ffect was very blunted consistent with the depressed mood", "[m]otor behavior and speech were slowed", "memory appeared to be impaired", and "[i]ntellecutal functioning" was impaired.  Tr. at 147-48.  He also found that Plaintiff had a GAF score of 50.  These findings substantiate the assessment of Dr. Dygert, and reflect clinical findings on the part of Dr. Madsen based on his examination.  The ALJ's decision to reject Dr. Madsen's opinion because it "appears to be based in large part on the claimant's subjective reports" was thus legal error.  *Langley*, 373 F.3d at 1121 (the ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints").

The ALJ also rejected Dr. Madsen's opinion because it was based on a one-time examination of Plaintiff and was not consistent with the record as a whole.  As to the record, the ALJ failed to state what Dr. Madsen's opinion was inconsistent with.  Indeed, the only medical evidence that Dr. Madsen's opinion appears to be inconsistent with was the consultative examiner's opinion who did not even examine the Plaintiff.  *See* discussion below regarding Dr Dyde.  As to the ALJ's reliance on the fact that Dr. Madsen only saw Plaintiff one time, this finding is particularly flawed given the ALJ's reliance on the opinion of Dr. Dyde who did not examine Plaintiff at all.

As discussed above, the RFC adopted by the ALJ rejected the findings of Drs. Dygert and Madsen and seemed to rely exclusively on the findings of Dr. Dyde, a

nonexamining consultative examiner.  However, Dr. Dyde was not in a position to

refute conclusions of Drs. Dygert and Madsen reached based on examination.  *Lee*,

117 Fed. Appx. at 678.  Indeed, as the Tenth Circuit noted in *Lee*, if the ALJ relies on

an opinion from a nonexamining practitioner, that opinion must find adequate support

in the medical evidence.  *Id.*  Neither the ALJ in the decision below nor the

Commissioner in its brief filed with this Court point to any medical evidence that

substantiates Dr. Dyde's  conclusions.  Further, the Tenth Circuit has stated that an

evaluation form of a consultative examiner based on even limited contact and

examination "'standing alone, unaccompanied by thorough written reports or

persuasive testimony, [is] not substantial evidence.'"  *Drapeau v. Massanari*, 255 F.3d

1211, 1214 (10th Cir. 2001).  Thus, the ALJ gave improper weight to Dr. Dyde's

assessment.

Finally, I note that the RFC adopted by the ALJ does not even exactly track    Dr.

Dyde's findings.  Dr. Dyde found in his assessment that Plaintiff had moderate

limitations in the ability to carry out detailed instructions and the ability to maintain

attention and concentration for extended periods.  Tr. at 102.  Dr. Dyde also found that

Plaintiff had moderate limitations in the ability to complete a normal workday and

workweek without interruption from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of rest periods.  *Id.*

at 103.  This would appear to preclude the work that the VE found Plaintiff could do,

pursuant to the VE's testimony.  *Id.* at 212.  The ALJ did not address these findings in

the RFC or his hypothetical question.  Instead, the ALJ relied on Dr. Dyde's conclusion in a later section of his report that Plaintiff can maintain attendance/pace within customary tolerances when work does not require more than simple instructions, ordinary routines and simple decision making. The ALJ should have addressed the inconsistencies in Dr. Dyde's analysis in making the RFC decision, and not simply ignored Dr. Dyde's findings that suggest moderate limitations.

In conclusion, the ALJ decided based on certain erroneous reasons that Dr. Dygert's and Dr. Madsen's opinions were not dispositive and not entitled to controlling weight.  The ALJ was not entitled to reject those opinions based on assumptions that were not supported by substantial evidence.  Further, the ALJ appeared to be substituting his own lay judgment for that of the medical practitioners and/or making credibility judgments that were not supported by the record.  "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Langley*, 373 F.3d at 1121 (emphasis in original) (quotation omitted).  Finally, the ALJ gave improper weight to the opinion of a nonexamining consultative examiner, and did not properly analyze the findings made therein.

Accordingly, I find that this case must be reversed and remanded for a proper weighing of all the medical evidence and a proper assessment of Plaintiff's RFC.

III.    <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed

and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated September 22, 2005

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

-13-